UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RICARDO VERNAIR DODSON, | : | Case No. 2:18-cv-908 |
| Plaintiff, | : | |
| vs. | : | District Judge George C. Smith |
| | : | Magistrate Judge Sharon L. Ovington |
| GARY C. MOHR, *et al.*, | : | |
| Defendants. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

Plaintiff Ricardo Vernair Dodson is an inmate at the Richland Correctional Institution in Mansfield, Ohio. He explains in his Complaint, brought under 42 U.S.C. §1983, that he was convicted of kidnapping and rape in 1991 and sentenced to serve 56 to 130 years in prison. The Ohio Parole Board has declined to release him on parole on seven separate occasions. Generally speaking, Dodson's Complaint challenges the constitutional validity of the decisions denying him parole.

The Court has previously dismissed many—but not all—of Dodson's claims. He asserts two remaining groups of claims: "(1) First Amendment retaliation claims against Defendants Alicia Handwerk, Ron Nelson, Jr., Tracy Reveal, Shirley A. Smith, and Ellen

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Venters; and (2) Fourteenth Amendments claims based on false reports when Dodson parole was denied." (Doc. #7, *PageID* #169).

Defendants seek dismissal of Dodson's First Amendment retaliation claims under Fed. R. Civ. P. 12(b)(6) as barred by res judicata and for lack of validity. Defendants also seek Rule 12(b)(6) dismissal of Dodson's Fourteenth Amendment claims.

Dodson opposes dismissal of his remaining claims under Rule 12(b)(6). He also argues that Defendants' Motion constitutes an improper pleading and asks the Court to strike, deny, or ignore it. (Doc. #24). Further, he asks the Court to reconsider the previous denial of his Motion to Amend Complaint and allow him to file a second Motion for Leave to Amend Complaint. (Doc. #27).

## II. Dodson's Complaint

The Court previously reviewed Dodson's Complaint and detailed his allegations and claims. Rather than repeating that review in full, it is incorporated herein by reference. (Doc. #s 6, 7). Still, some highlights will provide context for the parties' present Rule 12(b)(6) dispute.

In September 2017, Dodson obtained a copy of his parole file in connection with a previous case he had filed in the Northern District of Ohio—*Dodson v. Berenson*, No. 1:17cv327 (N.D. Ohio).[2] He alleges in the present case that when he reviewed his parole file, he realized it contained false information and that the Parole Board has relied on the

---

[2] Dodson attached documents to his Complaint that are apparently in his parole file. *See* Doc. #1, *PageID* #s 32-106. It is unclear whether he has submitted some or all of the documents in his parole file. Regardless, the present review of his factual allegations focuses on those he raises in the body of his Complaint.

false information to find him ineligible for parole. He also asserts that the reasons the Parole Board provided for denying parole are different from the reasons indicated in documents in his parole file. (Doc. #5, *PageID* #136, ¶45).

The falsehoods in Dodson's parole file, according to Dodson, relate to his expulsion from, and failure to complete, the Comprehensive Sex Offender Treatment Program (CSOP). He asserts that in his previous case—*Dodson v. Berenson*, 1:17cv327 (N.D. Ohio 2017)—U.S. District Judge James S. Gwin concluded, "Jennifer Whitten and David Berenson lied about the grounds used to support termination from the CSOP and they prevented Plaintiff from reporting staff misconduct." (Doc. #5, *PageID* #138).

Dodson did not advance claims against the Parole Board in his previous case. He did, however, challenge his dismissal from the CSOP. He claimed that Whitten and Berenson had "removed him from the CSOP without due process and in retaliation for reporting Ms. L's inappropriate behavior." *Dodson v. Berenson*, No. 18-3092, 2018 WL 7135183, at *1 (6th Cir. 2018). The U.S. Court of Appeals for the Sixth Circuit described his supporting allegations:

> In November 2016, Dodson claimed that, while he was working his assigned food service job, a prison staff member identified as "Ms. L" began "sharing personal history and information relating to her being raped and sexually abused." Ms. L purportedly told Dodson that she knew that he was a convicted rapist because she had looked him up on the internet. Dodson purportedly "stopped the staff member, told her that he felt very uncomfortable with the conversation, and walked away."
>
> Dodson later spoke about this encounter during a CSOP group session, at which time Jennifer Whitten, the CSOP administrator, allegedly "became very hostile and angry with [him]." Dodson alleged that Whitten ordered him to leave the room and ultimately informed him that "he was being removed from group" pending an investigation because she suspected that

3

he had violated the female worker's confidentiality. He also alleged that
Whitten had him fired from his food service job. Dodson further claimed
that David Berenson, the director of [CSOP], later informed him that he
was being terminated from the CSOP because he had taken advantage of a
vulnerable female worker and had manipulated her into sharing her
personal information.

*Id*. Ultimately in Dodson's previous case, the Sixth Circuit concluded that his retaliation claims against Whitten and Berenson failed because his allegations, when taken as true, showed he "was not engaged in protected conduct." *Id*. at *3. This conclusion is significant for present purposes and will be revisited below. *See infra*, §IV.

The Sixth Circuit also rejected Dodson's parole-interference claim, explaining:

Although Dodson argues that his removal from the CSOP interfered with
his eligibility for parole, we have previously rejected the notion that Ohio
inmates have a liberty interest in being paroled. *Jergens v. Ohio Dep't of
Rehab. & Corr. Adult Parole Auth.*, 492 Fed. App'x 567, 570 (6th Cir.
2012)). Because Dodson has no substantive liberty interest in parole, his
allegations that the defendants interfered with his ability to obtain parole do
not state a due-process claim.

*Dodson*, 2018 WL 7135183, at *3.

In the present case, Dodson again challenges the decisions denying him parole. He alleges that when he attended his July 2018 parole hearing, he was questioned about his expulsion from the CSOP, particularly about the fact that he told others in the program (inmates) that an institutional staff member told him she was a sexual-assault victim. According to Dodson, Defendant Smith—a Parole Board member—angrily asked him, "'you told a group of sex offenders that a staff member had been a victim of rape?'" *Id*. Dodson says he responded, "That is not what happened. The staff member lied about being a sexual assault victim." *Id*. Other Parole Board members, Defendants

4

Handwerk and Venters, appeared "quite agitated" and further questioned Dodson about this. Dodson emphasized that the staff member had lied to him because she had not been sexually assaulted. *Id*.

Dodson describes his constitutionally protected activities to include "[l]odging a verbal complaint against the staff for harassment and reporting misconduct." (Doc. #5, ¶120(1)). He further claims that Defendants retaliated against him because he had been terminated from, and failed to compete, the Comprehensive Sex Offender Treatment Program. *Id*.

Dodson identifies three retaliatory acts:

1. Defendants refused to refer him for a second time to the Comprehensive Sex Offender Treatment Program, knowing that he could not take or complete the Program without a referral.

2. Defendants refused to make this second referral while simultaneously requiring completion of this Program as prerequisite for parole eligibility.

3. Defendants denied him paroled based on false reports about information related to his expulsion from the CSOP.

(Doc. #5, *PageID* #147).

Dodson asserts that Defendants' wrongful acts have denied him a meaningful statutory-parole-eligibility hearing for 19 years, with no end in sight.

### III. Rule 12(b)(6) and §1983

Under Rule 12(b)(6), the Court accepts Dodson's allegations as true and liberally construes his Complaint in his favor. *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir.

5

2011). To survive Defendants' Rule 12(b)(6) motion, his Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The facts cannot make it merely possible that the defendant is liable; they must make it plausible. Bare assertions of legal liability absent some corresponding facts are insufficient to state a claim." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*, 556 U.S. at 678.

To state a plausible §1983 claim Dodson must allege facts sufficient to reveal that a person acting under the color of state law deprived him of a right the Constitution guarantees. *See Marie v. American Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014); *see also Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016).

### IV. Dodson's Retaliation Claims

Retaliation against an inmate because he or she engaged in constitutionally protected activity "is itself a violation of the Constitution." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To raise a plausible First Amendment retaliation claim, Dodson must allege facts that when taken as true and liberally construed in his favor suffice to show (1) he engaged in protected conduct; (2) he suffered an adverse action; and (3) the adverse action was motivated at least in part by his constitutionally protected

conduct. *Id*. (citations omitted).

Defendants contend that Dodson's claim of retaliation in violation of the First Amendment fails as a matter of law under the doctrines of res judicata and collateral estoppel.

"[R]es judicata has four elements: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Kane v. Magna Mixer Co*., 71 F.3d 555, 560 (6th Cir. 1995) (citing *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.,* 973 F.2d 474, 480 (6th Cir. 1992)). Defendants' reliance on res judicata fails on the third element. Dodson's present case concerns the alleged retaliation in the denial of his parole in July 2018. His previous case concerned CSOP-related events that occurred in or before 2017, in other words, before the parole board denied his parole in July 2018. He could not have raised in his earlier case—which the District Court dismissed in November 2017—his present claim that Defendants retaliated against him in violation of his constitutional rights when it denied him parole in July 2018. Defendants' reliance on res judicata therefore lacks merit. *See Kane*, 71 F.3d at 560 (res judicata inapplicable because "the Kanes could not have asserted a claim that they did not have at the time." (citation omitted)).

Defendants fare better with collateral estoppel. "Collateral estoppel…, bars relitigation of issues actually litigated and determined in an earlier action and necessary

7

to the judgment." *Id*. at 561 (citing *Sanders Confectionery Prods.,* 973 F.2d at 480; *United States v. Berman,* 884 F.2d 916, 922 (6th Cir. 1989)). In his previous case, Dodson litigated the issue of whether he engaged in protected conduct by reporting the same alleged staff misconduct he describes in the present case (lying about being a sexual-assault victim). *See* Doc. #24, *PageID* #290. He lost this issue on the merits when the Sixth Circuit found his report of staff misconduct did not constitute protected conduct. *Supra*, §II (quoting *Dodson v. Berenson*, 2018 WL 7135183, at *3). The Sixth Circuit explained:

> The defendants terminated Dodson from the CSOP after Dodson publicly informed the group, which included nine other sex offenders with a medium high or high risk of reoffending…, that a female food service employee was a sexual assault victim. The district court aptly noted that Dodson "did not report employee misconduct through any traditional channel provided by the prison administration." And Dodson himself admitted that he "may have used the wrong avenue" to "report" Ms. L's alleged statements. In light of these circumstances, it is clear that Dodson was not engaged in protected conduct. *See, e.g.*, *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008). The fact that Dodson may have been well-intentioned or that Ms. L may have later recanted her statement about being a sexual assault survivor is immaterial. Because Dodson's inappropriate statements did not constitute protected conduct, he "cannot proceed beyond step one" of the three-step retaliation analysis. *Id.* (quotation omitted). Hence, the district court properly dismissed Dodson's First Amendment retaliation claim.

*Id*. The lack of constitutionally protected conducted was the sole ground upon which his retaliation claim was dismissed. *See id*. It was therefore necessary—indeed essential—to the judgment against him. And as a result, collateral estoppel precludes him from relitigating the issue in the present case.

This means that Dodson is stuck with the conclusion that he did not engage in

8

constitutionally protected conduct when he reported during his CSOP treatment that a staff member had lied to him about being a victim of sexual assault. It does not matter that he presently shades this allegation a bit differently—he now asserts that he engaged in protected conduct by lodging a verbal complaint during his parole hearing against staff members for harassment and employee misconduct. (Doc. #5, *PageID* #147). The new target of his report—the Parole Board—does not alter the previous conclusion that his report about a staff member lying did not constitute protected activity. And, this conclusion adheres in the present case for the same reason his report of staff misconduct failed in his previous case: He did not properly report it "'through any traditional channel provided by prison administration.'" *Dodson*, 2018 WL 7135183, *3 (quoting *Dodson*, 2017 WL 4182277, at *3 (N.D. Ohio, 2017) (Gwin, D.J.).

Dodson, moreover, appears not to grasp that his report about a staff member lying to him about being a victim of sexual assault "is immaterial." *Dodson*, 2018 WL 7135183, *3 ("The fact that Dodson may have been well-intentioned or that Ms. L may have later recanted her statement about being a sexual assault survivor is immaterial."). Assuming the staff member had actually lied to him in the manner he alleges, it was his misconduct in reporting it during a CSOP session that led to his expulsion from the CSOP. Judge Gwin described his misconduct:

> Defendants state that they terminated Dodson from the CSOP because they viewed Dodson's story as inappropriate for a CSOP group session, and because Dodson was unrepentant about his actions. Defendants found Dodson's lack of remorse especially concerning because of the similarity between his story about the food service worker and the background of Dodson's rape conviction. Finally, they did not believe that Dodson was performing well in the CSOP even before this event.

9

*Dodson*, 2017 WL 5901024, at *5 (footnotes omitted). Dodson's evidence did not rebut Defendants' explanations. *Id.* Why does this matter now? Because Dodson again relies on the staff member's purported lie—this time to support his theory that the Parole Board retaliated against him. But, assuming the staff member had actually lied, the lie is as immaterial now as it was to his former claim in his earlier case that he was unconstitutionally expelled from the CSOP. His report about the lie was, and remains, conduct not protected by the Constitution even if the staff member had actually lied. *See Dodson*, 2018 WL 7135183, *3 ("it is clear that Dodson was not engaged in protected conduct." (citing *Lockett v. Sullivan*, 526 F.3d 866, 874 (6th Cir. 2008)).

Accordingly, a Rule 12(b)(6) dismissal of Dodson's First Amendment retaliation claims is warranted.

## V. Respondeat Superior

Defendants contend that respondeat superior provides no basis for §1983 liability against Defendants Gary Mohr, Director of the Ohio Department of Rehabilitations and Corrections, and Trayce Thalheimer, Chairperson of the Ohio Adult Parole Authority. This is correct.

Dodson's Complaint contains no factual allegation indicating that Defendant Mohr was involved in the Parole Board's decisions to deny him parole in or before July 2018. At most his position as Director of the Ohio Department of Rehabilitation and Corrections provided him with an attenuated, if any, role in the allegations Dodson raises. "[T]he law requires more than an attenuated connection between the injury and the

supervisor's alleged wrongful conduct." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). "[G]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior.*" *Id.* (quoting *Iqbal,* 556 U.S. at 676). Dodson's §1983 claims against Defendant Mohr therefore fail as a matter of law. Dodson also may not bring §1983 claims based on respondeat superior against Defendant Thalheimer due to her status as the Chair of the Ohio Adult Parole Authority. *See id.*

Dodson argues that he brings Fourteenth Amendment claims against Defendant Thalheimer because she was a member of the Parole Boards that denied him parole in 2012 and 2015. Assuming she held these positions and actively participated in proceedings that denied Dodson parole in 2012 and 2015, his claims related to those parole proceedings fail for pragmatic reasons to be explained below. *See infra*, §VII.

## VI. Dodson's Fourteenth Amendment Claims

Dodson claims that Defendants violated his rights under the Fourteenth Amendment by intentionally fabricating false information and reports, placing these fabrications into his parole file, and denying him parole based on facts they knew were false. *Id*. at 141.

Defendants contend that Dodson is not entitled to a new parole hearing every time he alleges an inaccuracy in his parole file. They point out that the Parole Board is not required to "'credit every unsupported allegation by a prisoner that the information [in his parole file] is inaccurate.'" (Doc. #22, *PageID* #273 (quoting *State ex rel. Keith v. Ohio*

*Adult Parole Auth.*, 141 Ohio St.3d 375, ¶27 (2014)). They further maintain that (1) Dodson has not alleged his parole file contains any substantive errors; (2) he admitted certain facts showing he was denied parole for legitimate reasons, particularly the facts establishing his crimes; (3) he has already confronted the Parole Board with his claim of false information in his parole file; and (4) any so-called "false" information in his parole file did not infect the decisions to deny him parole. (Doc. #22, *PageID* #s 273-74).

Before delving into the law, some clarification of Dodson's allegations is warranted because this section of Defendants' Memorandum contains inaccurate citations to Dodson's Complaint. *See* Doc. #22, *PageID* #s 273-74 (citing, and partially quoting, Doc. #5, *PageID* #s 140-42, 134-35). Dodson alleges that when he received a copy of his parole file in 2017 in his previous case, *Dodson*, No. 1:17cv327 (N.D. Ohio), he discovered it contained the following false information:

- He kidnapped and raped a mentally handicapped female victim.
- He caused the victim to become pregnant as a result of the rape and caused the victim to place the child up for adoption.
- He committed a domestic violence offense.
- He informed a group of sex offenders during treatment class that a female staff member was a rape victim.
- The community's objection to his release in the past, noted in his 2018 parole decision.

(Doc. #5, *PageID* #141-42, ¶ 86a-e).

Dodson asserts that he "has not been charged, indicted, or convicted pursuant to Ohio Revised Code Section 2907.02(A)(1)(c) or 2907.02(D) for rap[]ing or kidnapping a mentally handicapped female victim." (Doc. #5, *PageID* #142, 87l). Defendants have not directly addressed this assertion. Dodson alleges that he "did not cause the victim to

12

become pregnant as result of the rape…," and that this was established in a paternity case by DNA testing. *Id.* at ¶88. Defendants have not directly addressed these allegations. Dodson maintains, "he has never been convicted of a crime of violence under Ohio Rev. Code §2919.25. In fact, the domestic [violence] charge was dismissed by the Court." *Id.* at ¶89. Defendants have not directly addressed these assertions. And, Dodson alleges that his parole file contains no information regarding a community objection to his release on parole. *Id.* at ¶90(a). Defendants have not directly addressed this allegation.

A prisoner has no federal constitutional right to parole. *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979) ("[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). "'[T]he [S]tate of Ohio has not created a liberty interest in parole eligibility, as it has a completely discretionary parole system.'" *Jergens v. Ohio Dep't of Rehab.& Corr. Adult Parole Auth.*, 492 F. App'x 567, 570 (6th Cir. 2012) (quoting *Michael v. Ghee,* 498 F.3d 372, 378 (6th Cir. 2007)). But, Ohio law "create[s] a minimal due-process expectation that the information [in an inmate's parole file] will actually and accurately pertain to the prisoner whose parole is being considered." *State ex rel. Keith v. Ohio Adult Parole Auth.*, 141 Ohio St.3d 375 (2014); *see Jergens*, 492 F. App'x at 570. Thus, "even though Ohio prisoners have no liberty interest in parole itself, they do possess a liberty interest in being free from 'parole decisions ... made in reliance on information that the Parole Board [knew was] inaccurate or ha[d] reason to know [was]

13

inaccurate.'" *Jackson v. Hudson*, No. 2:18-cv-1319, 2019 WL 3521745, *3 (S.D. Ohio Aug. 2, 2019) (Watson, D.J.) (quoting *Kinney*, 2015 WL 1197812, at *4).

Defendants' contention that Dodson is not entitled to a new parole hearing every time he alleges an inaccuracy in his parole file is correct. *See Keith*, 153 Ohio St.3d at 570 ("[T]his court in *Keith I* did not hold that a writ of mandamus will issue every time an inmate identifies a factual error in his parole record."). In certain circumstances, however, an Ohio inmate is entitled to an investigation by the Ohio Adult Parole Authority (OAPA) of alleged falsities in his or her parole file and a correction of these falsities. *Keith v. Ohio Adult Parole Auth.*, 141 Ohio St.3d 375 (2014) says as much:

> The OAPA has and retains wide-ranging discretion in parole matters. A prisoner lacks any constitutional or statutory right to parole. However, having established a parole system, and having put in place statutory and regulatory language requiring the OAPA to consider relevant information regarding a prisoner it is considering for parole, the state has created a minimal due-process expectation that the information will actually and accurately pertain to the prisoner whose parole is being considered. Therefore, where *a credible allegation of substantive inaccuracies* in a prisoner's record is made, the OAPA is obligated to correct those errors before considering the inmate for parole. We therefore reverse and grant a writ [of mandamus] ordering appellees to investigate Keith's allegations and correct any substantive errors in the record used to consider him for parole.

141 Ohio St.3d at 381 (emphasis added).

In Defendants' quest to gain dismissal of Dodson's Fourteenth Amendment claims, they have not presented their take on the required analysis of Dodson's allegations of false information in his parole file. As appreciated above, Defendants cite to, and sometimes quote from, Dodson's Complaint, but they do not provide accurate

14

citations.  *See* Doc. #22, *PageID* #273-74.  This aside, Defendants emphasize that Dodson has been denied parole "because of his multiple victims—two different women in roughly a two month period—and the horrific nature of his crimes—Plaintiff kidnapped his first victim for approximately 12 hours and raped her repeatedly; she only escaped because the other rapist feared Plaintiff would actually kill her and helped her escape."  *Id*. at 274.

By focusing on Dodson's terrible crimes, Defendants appear to say that as long as an inmate's crimes were terrible—as Dodson's surely were—parole will be legitimately denied despite the presence of incorrect information in the inmate's parole file.  Defendants cite no case directly supporting this approach.  The only case Defendants rely on—*Keith*, 141 Ohio St.3d 375—does not support Defendants' terrible-crimes approach.  *Keith* instead asks whether the inmate has presented "a credible allegation of substantive inaccuracies …."  *Id*. at 381.  If substantive inaccuracies exist, the Parole Board (or OAPA) "is obligated to correct those errors before considering the inmate for parole."  *Id*.

Additionally, *Keith* does not require *definitive* proof that there is substantively incorrect information in an inmate's parole file.  This is seen in *Keith's* finding, "Keith has made a showing that there *may* be substantive errors in his records that *may* influence the OAPA's consideration of his parole."[3]  *Id*. at 381 (emphasis added).

---

[3] "*May* expresses likelihood >we may go to the party<…." *Garner's Modern English Usage*, p. 584 (Fourth Ed. 2016) (discussing "may" vs. "might") (italics in original).

Unfortunately, Defendants' Memorandum does not address whether Dodson's Complaint may contain "credible allegations of substantive inaccuracies." *Id*. They instead take a short road, driving the fact that he committed horrible crimes to their certain destination—legitimate reasons for not releasing him on parole. But if Dodson's parole file contains credible and substantively inaccurate facts—*i.e.,* facts "showing that there may be substantive errors in his record that may influence the [Parole Board's] consideration of his parole," *Keith*, 141 Ohio St.3d at 381—then he would be entitled to a correction of his record and consideration of his corrected record during a parole hearing.

This is not to say that every alleged incorrect fact Dodson finds in his parole file warrants correction or a new parole hearing. Again, it is only the "credible and substantively inaccurate facts…," *id*., that matter. Defendants' Rule 12(b)(6) Motion does not squarely address, with accurate citations to the record, whether any of Dodson's alleged factual inaccuracies constitutes a credible and substantively inaccurate fact.

In sum, Defendants' Motion falls short of supporting their proposition that Plaintiff's Fourteenth Amendment claims fails on the merits. This does not conclusively establish that Dodson's Fourteenth Amendment claims have merit. It simply means that Defendants' present Rule 12(b)(6) Motion lacks merit as to Dodson's Fourteenth Amendment claims.

## VII. Final Matters

There remain several remaining aspects of Defendants' Motion to address. First, Defendants argue that Dodson incorrectly reads Judge Gwin's ruling in his prior case. This appears in Dodson's Complaint, according to Defendants, in his insistence "that

Jennifer Whitten and David Berenson lied about the ground used to support termination of Plaintiff from the 'CSOP' and they prevented Plaintiff from reporting staff misconduct." (Doc. #5, *PageID* #138, ¶55). Defendants are correct. Judge Gwin did not hold that Whitten and Berenson ever actually lied about Dodson's CSOP activities. Judge Gwin's only reference to lying was his observation that Dodson had "provided evidence…, that they lied about one of the reasons underlying why they terminated him from the CSOP." 2017 WL 5901024, *6. Dodson reads too much into this passage. Saying there was evidence of lying, as Judge Gwin did, is a far cry from holding that lying actually occurred. In other words, Judge Gwin did not ultimately conclude that Whitten and Berenson had lied; he only recognized that Dodson had provided evidence of lying. *See id*.

Second, Defendants contend that Plaintiff fails to show he has standing to raise any remaining claims against Defendant Chrystal Alexander. It is unnecessary to characterize this as a standing issue. Dodson's Complaint simply fails to raise any remaining allegations against Alexander. His sole claim against her was dismissed at the outset of this case. (Doc.#7, *PageID* #169; Doc. #6, *PageID* #165). She should therefore be dismissed as a Defendant in this case.

Third, Dodson contends that Defendants' Motion to Dismiss is an improper pleading and should be stricken because Defendants waived their present challenges to his Complaint by not objecting to the Report and Recommendations at the initial-review stage. This contention lacks merit. The Federal Rules of Civil Procedure permit Defendants to bring their Rule 12(b)(6) Motion before their Answer was due. *See* Fed. R.

Civ. P. 12(b)(6). The Court, moreover, did not find on initial review that Plaintiff's remaining constitutional claims would survive a Rule 12(b)(6) Motion. The Court instead merely permitted Dodson's claims to "proceed at this time." (Doc. #6, *PageID* #s 162, 164; Doc. #7, *PageID* #169). Consequently, Defendants' lack of objection to this did not constitute a waiver or foreclose them from moving to dismiss Dodson's remaining claims under Rule 12(b)(6).

Lastly, Dodson challenges all seven of the Parole Board's decision to deny him release on parole because his parole file contained incorrect information. There is, however, no doubt that Dodson's parole file grew over time. There is no practical method of separating out what information was in his parole file before his most recent parole hearing in July 2018. And there is also no practical method of granting him relief stemming from a Fourteenth-Amendment violation that might have occurred during his pre-July 2018 parole denials. The clock cannot be turned back to those parole denials to provide him with relief connected to a Fourteenth Amendment violation that might, might not, have occurred then. For example, the Court has no practical way to grant Dodson a new parole hearing in 2000 or at any other time before July 2018.

At best for Dodson, the issue he presents is whether a Fourteenth Amendment violation occurred in connection with his July 2018 parole proceedings. If he ultimately establishes this claim, his remedy would be the correction of his current parole record followed by a new parole hearing. *See, e.g., Keith*, 141 Ohio St.3d at 381. For these reasons, dismissal of Dodson's Fourteenth Amendment claims concerning the Parole Board's pre-July 2018 decisions to deny him parole is warranted. The case should

proceed only on Dodson's Fourteenth Amendment claim in connection with his July 2018 parole file and hearing.

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendant's Motion to Dismiss (Doc. #22) be GRANTED in part, and Plaintiff's First-Amendment retaliation claim against Defendants Alice Handwerk, Ron Nelson, Jr., Tracy, L. Reveal, Shirley A. Smith, and Ellen Venters be DISMISSED; Plaintiff's claims against Defendant Mohr be DISMISSED; and Defendant Chrystal Alexander be DISMISSED as a party in this case;

2. Defendant's Motion to Dismiss (Doc. #22) be GRANTED, in part, and Plaintiff's Fourteenth-Amendment claims concerning the decisions denying him release on parole before July 2018 be DISMISSED;

3. Defendant's Motion to Dismiss (Doc. #22) be DENIED as to Plaintiff's Fourteenth-Amendment claim concerning his parole record and the July 2018 decision denying him release on parole;

4. Plaintiff's Motion to Strike, Deny, or Ignore Defendants' Motion to Dismiss (Doc. #24) be DENIED;

5. Defendants be ORDERED to respond to Plaintiff's Request for Reconsideration and Permission for Leave to File an Amended Complaint (Doc. #27); and

6. Plaintiff's Request for a Report and Recommendation (Doc. #28) be DENIED as moot.

December 9, 2019      *s/Sharon L. Ovington*
                      Sharon L. Ovington
                      United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).