UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RICARDO VERNAIR DODSON, | : | Case No. 2:18-cv-00908 |
| Plaintiff, | : | District Judge Sarah D. Morrison |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| GARY C. MOHR, et al., | : | |
| Defendants. | : | |

# ORDER

## I.   Introduction

The parties have been engaged in a long-running discovery dispute concerning Plaintiff's Interrogatories and Requests for Production of Documents. Their dispute has been recommitted to the undersigned judicial officer for resolution. (Doc. No. 72). The case has also been recommitted for further consideration of Plaintiff's Motion Requesting a Telephone Conference. (Doc. No. 65).

## II.   Background

### A.   Plaintiff's Fourteenth Amendment Claim

Plaintiff's single remaining claim asserts that "Defendants Thalheimer, Venters, Nelson, Handwerk, Smith, Reveal, Kovac, and Rauschenberg personally engaged in conduct in connection with Plaintiff's July 2018 parole proceedings that violated his Fourteenth Amendment right to a meaningful parole hearing." (Doc. No. 45, PageID 544). The conduct at issue was the Ohio Parole Board members' consideration of allegedly false

information in his parole file.  The false information is multifold, according to Plaintiff:

- He kidnapped and raped a mentally handicapped female victim.

- He caused the victim to become pregnant as a result of the rape and caused the victim to place the child up for adoption.

- He committed a domestic violence offense.

- He informed a group of sex offenders during treatment class that a female staff member was a rape victim.

- The community's objection to his release in the past, noted in his 2018 parole decision.

- "Extensive victimization."

(Doc. No. 46, PageID 555-58).

The merits of Plaintiff's assertion that the Parole Board considered false information in connection with his July 2018 parole proceedings is not presently at issue.  Instead, the parties' discovery dispute centers on Plaintiff's search for information to support his Fourteenth Amendment claim.  He repeatedly emphasizes that "[he] should have access to information necessary to establish his claim."  (Doc. No. 67, PageID 700; Doc. No. 65, PageID 667; Doc. No. 78, PageID 761).  And he maintains that the information he seeks in highly relevant to proving his claim.  (Doc. No. 67, PageID at 700-01).

### B. The Course of Discovery

Plaintiff sent Interrogatories and Requests for Production of Documents to Defendants' in late March 2020.  (Doc. No. 61, PageID 652).  Almost immediately, Defendants' counsel spotted two arguable problems with Plaintiff's discovery requests.  On March 31, 2020, he sent a letter to Plaintiff asserting that his Interrogatories—numbered 1

2

through 22—added up to more than 25, the number permitted by Fed. R. Civ. P. 33(a)(1). (Doc. No. 81, PageID 782). Defendants' counsel also faulted the Interrogatories for not being directed to a specific party in accordance with Fed. R. Civ. P. 33(b)(1)(A). Counsel then wrote, "Please correct and resubmit your interrogatories **directed to a specific party**." (Doc. No. 81, PageID 782). Counsel invited Plaintiff to contact him with any questions or concerns. *Id*.

On April 8, Plaintiff emailed Defendants' counsel asking for a phone conference with him to try resolve the problems raised in his March 31st letter. Plaintiff explains that Defendants' counsel "answered the email rejecting Plaintiff's requested conference and stat[ing] all communications will only be done in writing." (Doc. No. 54, PageID 612). On that same date, Defendants' counsel informed Plaintiff that sending letters by mail was the "primary method of communication used by conversation between our office and *pro se* inmate cases [sic] …." (Doc. No. 67, PageID 702). Counsel also noted, "The current COVID-19 protocols in place indicate that this would indeed be the best method with restrictive movements and related procedures in place…." *Id*.

The parties' discovery dispute continued through April and into May 2020 with no resolution. On April 15 Plaintiff filed his first Motion to Compel, seeking an order requiring Defendants to answer his Interrogatories and "provide [him] with the requested discovery." (Doc. No. 54, PageID 612). He offered six supporting grounds. *Id*. at 613-17. On May 6, Defendants' counsel filed a Memorandum opposing Plaintiff's Motion to Compel. (Doc. No. 56).

Meanwhile, back on April 30, Defendants' counsel wrote to Plaintiff asking for an

3

additional 30 days to respond to Plaintiff's Requests for Production of Documents. (Doc. No. 67, PageID 703). Counsel noted that he sought an extension until June 2. *Id*. It is unclear whether Plaintiff responded to this in writing. Based on his next actions, he most likely did not agree to the requested extension.

On May 18, Plaintiff filed Objections and a Second Motion to Compel Discovery, again seeking an order requiring Defendants to provide discovery. (Doc. No. 58). His third Motion to Compel followed on June 3. (Doc. No. 59).

Thus far, the parties' whack at discovery had accomplished little. Things began to move in a more productive direction when, on June 17, 2020, Defendants' new—and present—counsel wrote a letter informing Plaintiff that she had taken over the case from Defendants' former counsel. (Doc. No. 67, PageID 704). She explained that (1) Defendants' responses to Plaintiff's Interrogatories had been completed but needed to be signed by an authorized member of the Ohio Parole Board; and (2) she was gathering and reviewing documents in response to his Requests for Production, and she hoped to send them to Plaintiff "as expeditiously as I can." *Id*. She was true to her word: On June 22, she sent him Defendants' responses to his Interrogatories and Requests for Production, and she produced responsive documents to him. *Id*. at 705; *see* Doc. No. 81.

On June 24, Defendants' counsel filed a Memorandum in Opposition to Plaintiff's Third Motion to Compel, arguing that because Defendants had responded to all Plaintiff's discovery requests, his third Motion to Compel was moot. (Doc. No. 64, PageID 663).

In early July, Plaintiff filed a Motion Requesting a Scheduled Conference Via Telephone to Discuss and Resolve Issues in Discovery. (Doc. No. 65). Plaintiff expressed

his willingness to enter into a protective order in which he would agree to use confidential information produced by Defendants in discovery "only for the purpose of prosecuting or defending this litigation, or assisting counsel in prosecuting or defending this litigation, and shall not use Confidential Information outside this litigation …." *Id*. at 667. He suggested that if Defendants believed disclosure of the information he seeks would implicate security matters, they should seek a protective order. And he emphasized that the public has a right to everyman's evidence to hold government officials accountable, and he should have access to information necessary to establish his claim. *Id*.

In mid-July, Plaintiff filed a Motion to Test the Sufficiency of Defendants' Objections to Discovery Production—Interrogatory Answer, and Fourth Motion to Compel. (Doc. No. 67). He criticized many aspects of Defendants' discovery responses, including their boilerplate objections and lack of specificity, failure to provide a privilege log, failure to move for a protective order, and failure to timely respond to his discovery requests. Plaintiff also argued relevance:

> The information sought is highly relevant in proving that [D]efendants intentionally violated [his] due process right, including substantial due process right to a fair parole hearing by intentionally, knowingly, fabricating false reports/information in consideration of parole, and then relying on the false information/reports to decide parole….

*Id*. at 700-01.

Defendants timely opposed Plaintiff's Motion to Test the Sufficiency of Defendants' Objections and his Fourth Motion to Compel, contending that they had responded to all of Plaintiff's discovery requests and that Plaintiff had steadfastly refused to make a good-faith effort to resolve "the dispute, whatever it is, with Defendants' legal

counsel …." (Doc. No. 71, PageID 729).

The undersigned Judicial Officer issued an Order denying Plaintiff's Fourth Motion to Compel as moot in light of Defendants' responses and production of documents. (Doc. No. 66). Plaintiff's Objection, and Defendants' response, soon followed. Upon her review and recommittal order, U.S. District Judge Sarah D. Morrison observed, "it appears that while Mr. Dodson's request for a *response* to his discovery requests was moot, his objections to the *contents* of this discovery response was not moot. That dispute has yet to be resolved." (Doc. No. 72, PageID 732).

On August 18, Plaintiff filed his Reply in Support of his Motion to Test the Sufficiency of Defendants' Objections. (Doc. No. 73). On August 21, Defendants filed their privilege log, explaining that out of the thirty pages of documents they had produced to Plaintiff, three redactions were made on the first page—namely, Plaintiff's day and month of birth and the names of his victims "to prevent further trauma and pursuant to OAC Ann. 5120:1-1-36 7.1." (Doc. No. 76, PageID 752). Defendants' counsel further reported, "No documents from Dodson's 2018 parole hearing were withheld." *Id*.

On August 31, 2020, Plaintiff filed Objections to Defendants' Privilege Log and Request for an Order Directing Defendants to Provide Requested Discovery, and he moved "for a second time for [a] discovery conference." (Doc. No. 78, PageID 755). He raised four objections to Defendants' privilege log, including waiver and lack of clarity in Defendants' boilerplate objections. *Id.* He responded to Defendants' objections to his Interrogatories 4 and 11. He also challenged Defendants' improper boilerplate objections and failure to verify that a diligent search was made by the custodian of records for

6

responsive documents. And he veered into his due-process claim by alleging, in part, that Defendants fabricated the false report that he "raped a mentally retarded White female, caused her to become pregnant with a N****R child, resulting in the child being put up for adoption." *Id*. at 760 (Plaintiff's capitalization). In conclusion, he emphasized, "Again, the plaintiff …, was not indicted, accused [sic], or found guilty by a jury, of raping a mentally retarded white female causing her to become pregnant with a N****R child that resulted in giving the N****R child up for adoption." *Id*. at 761 (Plaintiff's capitalization). And Plaintiff asserted that given his acceptance of responsibility for his crimes, his repeated apologies to his victims, and his hard work at rehabilitating himself and serving the community while incarcerated, he "does not deserve to be labeled as a CRAVED [sic] N****R who[] raped a mentally retarded white female causing her to become pregnant resulting in the adoption of the child…." *Id*. (Plaintiff's capitalization).

On September 14, Plaintiff filed a Memorandum in Support of Requested Status Conference in Resolution of Discovery Dispute. (Doc. No. 85). He repeated many of his arguments and asserted that Defendants have interfered with discovery to the point where their conduct is sanctionable.

### III. Discussion

#### A. Discovery Standards

The standards applicable to the parties' discovery activities and dispute are set in Fed. R. Civ. P. 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the

7

>amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "[T]he court must limit the frequency or extent of discovery ... if it determines that ... the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii).

### B. Plaintiff's Motions to Compel and Objection to Defendants' Privilege Log

Plaintiff's First Motion to Compel challenged the assertions that Defendants' original counsel raised in his March 31, 2020 letter. *See* Doc. No. 54. When Plaintiff responded to Defendants' opposition to Plaintiff's First Motion to Compel, he also filed a Second Motion to Compel seeking an Order requiring Defendants to respond to his discovery requests. *See* Doc. No. 58. His Third Motion to Compel, dated June 3, 2020, reported that Defendants still had not responded to his discovery requests. He again sought an order requiring Defendant to respond to his discovery requests. *See* Doc. No. 59.

Although Plaintiff was doubtlessly frustrated by Defendants' initial nonresponsiveness, Defendants eventually answered his Interrogatories and Requests for Production of Documents. In doing so, they listed 18 General Objections and Reservations, and they raised many objections to each Interrogatory and Request for Production. Because Plaintiff's First, Second, and Third Motions to Compel pre-dated Defendants' discovery responses, these Motions did not challenge the contents of Defendants' eventual responses. Further, these Motions (Doc. Nos. 54, 58, 59) are now

8

moot because they sought an order compelling Defendants to respond to his discovery requests, and Defendants have since responded to his discovery requests.

What remains at issue are the contents of Defendants' objections and responses to Plaintiff's Fourth Motion to Compel. He contends that Defendants' objections fail because they (1) are boilerplate; (2) lack specificity; (3) are not explained in a privilege log; (4) are rote in nature; (5) are not accompanied by related motions for protective order; and (6) are untimely ("Defendants failed to object to discovery request within 30 … days"). (Doc. No. 67, PageID 694).

Boilerplate objections generally have no utility in large part because "[t]he grounds for objecting to an interrogatory must be stated with specificity." Fed. R. Civ. P. 33(b)(4); *see* Fed. R. Civ. P. 34(b)(2)(B); *e.g., Davis v. American Highwall Mining, LLC*, 6:19-CV00096-MAS, 2020 WL 5494520, at *2 (E.D. Ky. 2020) ("a boilerplate objection has no legal effect."). But, even if some of Defendants' objections may be fairly characterized as boilerplate or lacking specificity, this does not help Plaintiff obtain additional discovery. This is because Defendants have also provided substantive responses to all Plaintiff's Interrogatories, except Interrogatory No. 6, and all his Requests for Production of Documents. *See* Doc. No. 81, PageID 786-93, 806-10.

Plaintiff's Interrogatory No. 6 seeks the identity of those who submitted any information, statement, testimony, or document to the Ohio Parole Board in connection with his 2018 parole proceedings, including (in part) victim's representatives, member or prosecutors of the Franklin County Prosecutor's Office, and personnel at the Richland Correctional Institution (where Plaintiff is incarcerated). *Id*. at 787-88. Defendants

responded:

> Objection: Defendants object to this discovery request as it is vague, ambiguous, scope or subject [sic], overly broad, unduly burdensome, oppressive, and calls for unbounded discovery. Some records if released could present a security risk to an institution operated by the department or could jeopardize the safety of department personnel. In addition, records that identify the victim of a crime committed by the offender, or contain statements made by informants, statements made by prosecuting attorneys and judges concerning the offender, witness protection information, inmate separation information, juvenile criminal history and diagnostic and testing information of the offender pursuant [sic] are prohibited from release pursuant to OAC Ann. 5120:1-1-36. Defendants also object as to relevancy.

*Id*. at 788.

Even if some of Defendants' objections may be fairly characterized as boilerplate or vague, Defendants are correct that Ohio administrative law prevents the Ohio Parole Board from disclosing the non-public information Plaintiff seeks in Interrogatory No. 6. *See* Ohio Admin. Code § 5120:1-1-36(F), (G), (I).

Plaintiff's stated willingness to enter into a protective order to shield confidential information, such as victim-impact statements, or information that might pose an institutional or personal-security threat does not constitute a viable solution in the circumstances of this case. As just explained, Ohio administrative law prohibits Defendants from releasing certain non-public information to Plaintiff. A protective order would not nullify this prohibition or override its underlying concerns—most significantly, institutional security, informant and prosecutor safety, and preventing additional harm to victims.

Plaintiff's next point—that Defendants have not produced a privilege log—was

valid until August 21, 2020, the date on which Defendants filed their privilege log. (Doc. No. 76). Since then Plaintiff has focused on Defendants' responses to his Request for Production No. 4 and Interrogatory 11.

His Request for Production No. 4 concerns 2018 parole records. He seeks:

4. Any/all materials considered and relied upon by the Parole Board in connection with the 2018 request for parole, official or unofficial, including but not limited to:

    a. Any victim impact statements, including statements from the victim's representatives.
    b. Any correspondence and/or communications between or between or among OPB Members or OPB staff relating to formal or informal hearings, board meetings, telephone conferences, emails, and text messages.
    c. Internal memoranda among OPB Members.
    d. Notes among OPB Members.
    e. Minutes.
    f. Vote Sheets of any/all OPB members whom participated in deciding plaintiff's parole.

(Doc. No. 78, PageID 757; Doc. No. 81, PageID 808).

Defendants raised numerous objections to Plaintiff's Request for Production No. 4, contending that "Parole Board members review a multitude of records when reviewing an inmate's eligibility for parole typically on laptop computers. There is not one file that contains all of the information reviewed." *Id*. Defendants further maintained that Ohio Admin. Code § 5120:1-1-36 prohibits the release of much of the information—e.g., records identifying the victim of a crime committed by the offender, and statements by informants, prosecuting attorneys, and others." (Doc. No. 81, PageID 808). And Defendants explained that "the only disclosable records permitted by OAC Ann. 5120:1-1-36 and maintained by

11

Defendants are contained in the Plaintiff's 2018 Parole packet, paginated as 000001-27." *Id*.

Plaintiff's Interrogatory No. 11 asks Defendants to identify all the documents the OPB reviewed, consulted, or relied on when considering his July 2018 parole application. *Id*. at 789. Defendants raised the same objections and responses to both Interrogatory No. 11 and Request for Production No. 4. (Doc. No. 78, PageID 757-58; Doc. No. 81, PageID 789-90, 808).

Regardless of whether some of Defendants' responses to Plaintiff's Request for Production No. 11 and Interrogatory No. 4 constituted boilerplate objections, Defendants specifically and sufficiently responded by relying on Ohio Admin. Code § 5120:1-1-36 and by otherwise producing the responsive documents from Plaintiff's July 2018 parole proceedings.

Plaintiff next maintains that Defendants must produce additional responsive discovery because they have not filed a Motion for a Protective Order. Yet Defendants are not required to file a Motion for Protective Order, although they may have done so in response to Plaintiff's Interrogatories and Requests for Production of Documents. *See* Fed. R. Civ. P. 26(c). Additionally, there was no error in the fact that Defendants did not seek a protective order but instead chose to oppose Plaintiff's multiple Motions to Compel and produce Plaintiff's 2018 parole records.

Plaintiff also contends that Defendants' failure to respond to his Interrogatories and Requests for Production within thirty days constitutes a waiver of any objections to them even objections based on privilege. While this may generally true, the circumstances in the

present case do not warrant a finding that Defendants have waived their objections due to their tardy discovery responses. Although Defendants' original counsel was not as diligent as he should have been in responding to Plaintiff's Interrogatories and Requests for Production, Defendants' current counsel has been diligent in her discovery work. Plaintiff, moreover, has not shown that he has been prejudiced by Defendants' original counsel's tardiness in responding to his discovery requests, and none appears in the case record. Indeed, throughout discovery he has filed numerous Motions and memoranda containing substantive arguments and has not asserted that his ability to litigate his discovery arguments have been hindered by the initial delay in Defendants' responses. In these circumstances, waiver should not be imposed upon Defendants.

      **C.**    **Informal Discovery Telephone Conference**

District Judge Morrison observed in her recommittal Order, "Defendants have stated a reluctance to speak with Mr. Dodson via the telephone because he is incarcerated and because of the pandemic. Given this lack of communication and Mr. Dobson's objections to Defendants' discovery response, a status conference in this case may be appropriate." (Doc. No. 72, PageID 733 (citation omitted)).

As District Judge Morrison explained, S.D. Ohio Civ. R. 37.1 typically disfavors judicial intervention in discovery disputes. It instead asks the parties to resolve discovery disputes themselves and "to turn to the Court only as a last resort." (Doc. No. 72, PageID 732-33). The parties in the present case were not able to resolve their discovery disputes, and Plaintiff consequently requested a telephone conference. (Doc. No. 65).

The above history of the parties' discovery dispute reveals that they have

extensively briefed their contentions and have become entrenched in their opposing positions.  *See supra*, § II(B).  Their entrenchment would likely be counter-productive during an informal discovery phone conference, which in most situations would occur in a less adversarial, more cooperative atmosphere.  *See* Rule 37.1 ("After extrajudicial means for the resolution of differences about discovery have been exhausted, in lieu of immediately filing a motion under Fed. R. Civ. P. 26 or 37, any party may first seek an informal telephone conference with the Judge assigned to supervise discovery in the case.").

Accordingly, an informal discovery telephone conference is not warranted.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiffs' First, Second, and Third Motions to Compel (Doc. Nos. 54, 58, and 59) are DENIED;

2. Plaintiff's Motion to Test Sufficiency of Defendants' Objections to Discovery (Doc. No. 67) is GRANTED and the sufficiency of Defendants' Objections have been considered as set forth herein; Plaintiff's Fourth Motion to Compel (Doc. No. 67) is DENIED;

3. Plaintiff's Objection to Defendants' Privilege Log (Doc. No. 78) is OVERRULED, and Plaintiff's Request for an Order Directing Defendants to Produce Discovery (Doc. No. 78) is DENIED; and

4. Plaintiff's Motion Requesting a Scheduled Conference Via Telephone (Doc. No. 65) is DENIED.

October 9, 2020                                *s/Sharon L. Ovington*
                                                                   Sharon L. Ovington
                                                                   United States Magistrate Judge