UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| RICARDO VERNAIR DODSON, | : Case No. 2:18-cv-908 |
| Plaintiff, | : |
| vs. | : District Judge Sarah D. Morrison |
| | : Magistrate Judge Sharon L. Ovington |
| GARY C. MOHR, *et al.,* | : |
| Defendants. | : |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

One claim remains in this hard-fought case brought pro se under 42 U.S.C. § 1983. Plaintiff Ricardo Dodson is a long-term inmate presently incarcerated at the Richland Correctional Institution. He has been denied release on parole many times, most recently in July 2018. He asserts in his sole remaining claim that in July 2018 Defendants violated his constitutional right to meaningful parole consideration. Defendants are members of the Ohio Adult Parole Authority or the Parole Board who declined to release him on parole in July 2018.

Dodson and Defendants have filed Motions for Summary Judgment (Doc. No. 83, 109, 110) and corresponding Memoranda in Opposition (Doc. No. 113, 114). Additionally, Dodson has submitted other motions and materials that conceivably bear, at least in part,

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

on the parties' Motions for Summary Judgment (Doc. No. 90, 94, 96, 97, 99, 103, 106, 115, 116, 117, 119, 120), as have Defendants (Doc. No. 81, 111, 112, 118, 121).

Despite the parties' many filings, the overarching issue is straightforward: whether either party is entitled to summary judgment on Dodson's remaining claim.

**II.   Background**

Dodson was convicted in state court in 1991 of kidnapping, rape, and attempted rape. (Doc. No. 83-2, PageID 868). He explains in his Amended Complaint that he is 56 years old (in February 2020) and that he "was sentenced in March of 1991 to an indeterminate sentence of 56 to 130 years." (Doc. No. 46, PageID 550). At the time of his parole hearing in July 2018, Dodson had served approximately 27 years of his indeterminate sentence.

Dodson was first denied release on parole in 2000. He then received a parole hearing every three years but was denied parole on each occasion.

The record of Dodson's parole proceedings in July 2018 contains much information relevant to his eligibility for parole. It describes his criminal history:

> 3rd Adult Felony Conviction, 2nd Adult Prison Number; Prior Adult Felony Convictions = Forgery (2cts.) (Community Control) '83; Forgery [#R139593] '86; Adult Misdemeanor Convictions = Attempted Assault '85, Negligent Assault '87, Disorderly Conduct 01/89, 06/89 and 06/90.

(Doc. No. 81-6, PageID 815). It describes his "Ability to Control" as, "[h]ighly impulsive and [sic] violent criminal behaviors." (Doc. No. 81-6, PageID 815).

Dodson's "Responsivity to Programming" was noted to have been very positive. He had completed an apprenticeship in 2016. *Id*. at 816. Before his parole hearing in 2015,

2

Dodson had completed many programs, including (for example), "Hope/Faith/Courage Group '99, Substance Abuse Education '03, Non-Violent Resolution '03, Alternative Other Than Violence '03, Spanish Class '03, Victim Awareness '03, Basic Sign Language Course '04, Career Tech.-Admin. Office Tech. '06, MSOP '07, Psychology of Incarceration '08, Tutor Training '13, Connect Ohio '14." *Id*. But in November 2016, Dodson had been terminated from the CSOP (Comprehensive Sex Offender Program). (Doc. No. 81-6, PageID 816).

Dodson's last institutional ticket for misconduct was in 2011, and his last hearing before the Rules Infraction Board was in 2001. *Id*.

The 2018 parole record quoted Dodson's 2015 parole record, which stated:

> The Parole Board has determined that the inmate is not suitable for release at this time [in July 2015]. The inmate has completed good programming and has improved institutional conduct; however, multiple victims and has not taken Comprehensive Sex Offender Programming. Community members have objected to his release in the past—not willing to release at this time—release would not be consistent with the welfare and security of society or in the interest of justice.

*Id*.

In the category of "Offender Change," Dodson's 2018 parole record states, "Inmate Dodson admits to his offenses. [He] has limited insight into the commission of his crimes; and lacks relevant programming—specifically related to sex offending—to abate his risk to the community. Inmate Dodson lacks positive Offender change." *Id*.

As to "Observations," the 2018 parole record notes, "Elevated Risk,

3

Insufficient Time Served on Convictions, Violence, Brutality, Extensive Victimization, Multiple Victims, Multiple Occurrences, Lacks Insight, Lacks Programming (specifically related to Sex Offending). Inmate Dodson is not suitable to be released at this time." *Id*.

The Parole Board's rationale for denying Dodson release on parole explained:

> Inmate Dodson has been assessed as having an Elevated Risk for reoffending. Inmate Dodson's case is aggravated by the case-specific factors of violence, brutality, multiple occurrences, multiple victims, and extensive victimization. In the Interest of Justice, Inmate Dodson has not served sufficient time on his convictions. Inmate Dodson has completed some relevant programs to address his risk factors for reoffending; However, the Serious Nature of the Crimes and the aggravated circumstances in the offenses do outweigh the efforts presented by Inmate Dodson. The aggravating circumstances in this case lead the Board to concluded that release would demean the seriousness of the offenses and not further the interest of justice. After weighing the relevant factors, the Board does not consider the inmate suitable for release at this time and assesses a three year continuance.

(Doc. 81-6, PageID 817).

Dodson alleges in his Motion for Summary Judgment that the Parole Board considered the following false information when declining to release him parole on July 2018:

- He kidnapped and raped a mentally handicapped female victim.

- He caused the victim to become pregnant as a result of the rape and caused her to place the child up for adoption.

- He had committed a domestic violence offense in the past.

- The community's objection to his release in the past.

- Extensive victimization.

4

(Doc. No. 109, PageID 1038). In his Amended Complaint, Dodson alleges that the Parole Board considered a fallacious report that he had been terminated from participating in the Comprehensive Sex Offender Program because he had informed a group of sex offenders during class that a female staff member was a rape victim. (Doc. No. 46, PageID 556-57).

### III. Cross-Motions for Summary Judgment

Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017). To resolve whether a genuine issue of material fact exists, "[t]he evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party." *Neal v. Morales Real Estate Investments, Ltd.*, 2:18cv632, 2020 WL 3433149, at *9 (S.D. Ohio 2020) (Morrison, J.) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (other citation omitted). "[T]o avoid summary judgment, the non-moving party must show that there is more than 'some metaphysical doubt as to material facts.'" *Goodman v. J.P. Morgan Investment Management, Inc.*, 954 F.3d 852, 859 (6th Cir. 2020) (quoting *Matsushita*, 475 U.S. at 586). And "[t]he 'mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Neal*, 2020 WL 3433149, at *9 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986))

5

(other citation omitted); *see Moore v. Philip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (nonmoving party must present "significant probative evidence …."); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (nonmoving party must "present affirmative evidence ….").

"The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Jones v. Potter,* 488 F.3d 397, 402-03 (6th Cir. 2007) (quoting, in part, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)). "Accordingly, '[e]ntry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Whitfield v. Tennessee,* 639 F.3d 253, 258 (6th Cir. 2011) (citations omitted).

**IV.     Discussion**

    **A.     <u>Parole and the Fourteenth Amendment</u>**

A prisoner has no federal constitutional right to parole. *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979) ("[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). "'[T]he [S]tate of Ohio has not created a liberty interest in parole eligibility, as it has a completely discretionary parole system.'" *Jergens v. Ohio Dep't of Rehab.& Corr. Adult Parole Auth.*, 492 F. App'x 567, 570 (6th Cir. 2012) (quoting *Michael v. Ghee*, 498 F.3d 372, 378 (6th Cir. 2007)). But Ohio law "create[s] a minimal due-process

6

expectation that the information [in an inmate's parole file] will actually and accurately pertain to the prisoner whose parole is being considered." *State ex rel. Keith v. Ohio Adult Parole Auth.*, 141 Ohio St.3d 375 (2014); *see Jergens*, 492 F. App'x at 570. Thus, "even though Ohio prisoners have no liberty interest in parole itself, they do possess a liberty interest in being free from 'parole decisions ... made in reliance on information that the Parole Board [knew was] inaccurate or ha[d] reason to know [was] inaccurate.'" *Jackson v. Hudson*, No. 2:18-cv-1319, 2019 WL 3521745, *3 (S.D. Ohio Aug. 2, 2019) (Watson, J.) (quoting *Kinney v. Mohr*, No. 2:13cv1229, 2015 WL 1197812, at *4 (S.D. Ohio 2015) (Marbley, J.)).

What controls determination of whether the parole board or the Ohio Adult Parole Authority (OAPA) relied on information it knew, or had reason to know, was inaccurate? *Keith* is instructive. The Ohio Supreme Court explained in *Keith* that the parole board was not required to "conduct an extensive investigation on the information it reviews for every prisoner to ensure accuracy …." and it was not required to "credit every unsupported allegation by a prisoner that the information is inaccurate." 141 Ohio St.3d at 380. "But where there are credible allegations, supported by evidence, that the materials relied on at a parole hearing were substantively inaccurate, the OAPA has an obligation to investigate and correct any significant errors in the record of the prisoner." *Id*. The Ohio Supreme Court observed that Keith presented more than mere allegations; he "made a showing that there may be *substantive errors* in his record that may influence the OAPA's consideration of his parole." *Id*. at 381 (emphasis added). The substantive error in Keith's parole record indicated he had been paroled eight times when he had been paroled only six times. The

7

remedy: an Order requiring the OAPA to "conduct an investigation into Keith's allegations and correct any *substantive errors* in the record it uses to consider him for parole." *Id.* at 381 (emphasis added).

In a more recent parole-due-process case, the Ohio Supreme Court provided insight into what amounts to "substantive error": "The question is whether the alleged error, supported by evidence, may have affected the outcome of the parole hearing." *State ex rel. Cobb v. Ohio Adult Parole Auth.*, 155 Ohio St.3d 527, 530 (2018). "'[S]ubstantive error' in this context to mean 'substantial error,' or **'**an error that affects a party's substantive rights or the outcome of the case and, as a consequence, may require reversal on appeal.'" *Al'Shahid v. Hudson*, 2:18cv33, 2020 WL 469876, at *5 (S.D. Ohio 2020) (Deavers, M.J.) (quoting *Cobb*, 155 Ohio St.3d at 529).

In the end:

> The OAPA has and retains wide-ranging discretion in parole matters. A prisoner lacks any constitutional or statutory right to parole. However, having established a parole system, and having put in place statutory and regulatory language requiring the OAPA to consider relevant information regarding a prisoner it is considering for parole, the state has created a minimal due-process expectation that the information will actually and accurately pertain to the prisoner whose parole is being considered.

*Keith*, 141 Ohio St.3d at 381.

This leads to Dodson's allegations of false information in his parole records.

### B. <u>Allegedly False Facts</u>

Dodson contends that he is entitled to summary judgment because the Parole Board

8

relied on the false fact that he kidnapped and raped a mentally retarded white female causing her to become pregnant with an African-American child and causing the victim to place the child up for adoption. He states that he did not kidnap and rape a mentally retarded[2] white female, and he argues that this is shown because he was not accused, charged, indicted, convicted, or sentenced for kidnapping and raping a mentally retarded female in violation of Ohio Revised Code § 2907.02(A)(1)(c).

Dodson's parole records from 2018 make no mention that one of his victims had an intellectual disability, that one victim became pregnant as a result of Dodson's rape, or that the victim placed the child up for adoption. (Doc. 83-2, PageID 868-94). As a result, no reasonable juror could conclude that Defendants knew or reasonably should have known that Dodson's 2018 parole records contained this allegedly false information.

Yet it is not clear whether, in July 2018, the Parole Board reviewed only the documents dated in 2018—a record consisting of only the twenty-seven pages attached to Defendants' Motion for Summary Judgment. (Doc. 83-2, PageID 868-94). It is reasonable to infer that the Parole Board considered more than just these twenty-seven pages because it quoted, and thus, considered findings from Dodson's 2015 parole proceedings. (Doc. No. 81-6, PageID 816). Dodson, moreover, relies on Parole Board records concerning him that pre-date July 2018. *E.g.,* Doc. No. 1-2, PageID 32-43; Doc. No. 1-3, PageID 44-116. These records were certainly available to the Parole Board to consider when he was up for

---

[2] The term "mental retardation" is used here to describe Dodson's claims. "The term *intellectual disability* is now preferred over *mental retardation* …." https://www.merriam-webster.com/dictionary/mental%20retardation.

9

parole in July 2018. And at this state of the litigation, Dodson is entitled to the inference, in his favor, that the Parole Board considered these documents in July 2018. Consequently, the summary-judgment question is whether these records, viewed in Dodson's favor, reveal that the Parole Board in July 2018 relied on one or more substantive errors that it knew or reasonably should have known were incorrect. *See Keith*, 141 Ohio St.3d at 380 ("[T]he OAPA may not rely on information that it knows or has reason to know is inaccurate.")

Dodson's parole records in 2012 state, "one victim mentally challenged," (Doc. No. 109-2, PageID 1064, 1065), and "she is lower functioning (slightly MR[3])." *Id*. at 1069; *see* Doc. No. 109-2, PageID 1075 (2015 record: victim "reported to be mentally disabled"). Accepting as true that Dodson did not know the victim had an intellectual disability and that he informed the Parole Board in 2012 about his lack of knowledge, neither fact is probative of the falsity he alleges—that the victim did not actually have an intellectual disability. Dodson points out that he was never charged or convicted for the kidnapping and rape of a victim with an intellectual disability under Ohio Rev. Code § 2907.02(A)(1)(c). This is correct. But this non-existent charge or conviction fails to create a reasonable inference that his victim did not have an intellectual disability. There are many reasons a prosecutor might choose not to charge or seek such a conviction. One reason in Dodson's circumstances is that he admittedly lacked knowledge of his victim's intellectual disability or that she lacked, as the statute says, her "ability to resist or consent

---

[3] MR is the acronym for the outdated descriptor "mentally retarded."

10

[was] substantially impaired because of a mental … condition …." § 2907.02(A)(1)(c).[4] In 2012, Dodson informed the Parole Board in writing that he had no knowledge of his second victim having an intellectual disability. (Doc. 1-3, PageID 73-75). Consequently, the lack of a charge against him under this subsection of Ohio's rape statute is attributable to his acknowledged lack of the required mental state. And Dodson does not otherwise rely on affirmative or probative evidence that indicate Defendants knew, or reasonably should have known, his victim had an intellectual disability.

Next, Defendants acknowledge that Dodson's Amended Complaint and pre-2018 parole records are not silent on the issue of pregnancy and adoption. (Doc. No. 83, PageID No. 857). Dodson alleges in his Amended Complaint that his 2009, 2012, 2015, and 2018 parole records state that the kidnapping and rape caused one victim to become pregnant and caused her to place the child up for adoption. (Doc. No. 46, PageID 555). To demonstrate that his parole records contain this false information, Dodson relies on a Journal Entry from juvenile court—which according to him—"dismiss[ed] a Paternity suit filed by the victim against [him] regarding establishing child-parent relationship." *Id*. He alleges that those proceedings determined he was not the father of the child but "one Larry Stuckey was found to be 99.9 percent of being the father …." *Id*. These documents, however, do not confirm his description.

---

[4] This section of Ohio's rape statute prohibited engaging in sexual conduct when "[t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender *knows or has reasonable cause to believe* that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition …. " § 2907.02(A)(1)(c) (eff. to Jan 1, 2007).

The documents stem from a 1992 parentage case filed in the Juvenile Branch of the Franklin County Court of Common Pleas, Domestic Division. (Doc. 1-3, PageID 89-92). Specifically, the Journal Entry states that the case was dismissed *without prejudice* for failure to prosecute. (Doc. 1-3, PageID 92). Contrary to Dodson's repeated assertions otherwise, the Journal Entry makes no mention of paternity-test results; it fails to find Dodson is the father of his victim's child; and it does not state that Larry Stuckey is the father. It is reasonable to conclude that if the Juvenile Court had, as Dodson alleges, determined through DNA-paternity testing that Larry Stuckey fathered the victim's child, the Court would have issued a judgment entry reflecting that parentage determination. The records on which Dodson relies do not contain a copy of such a judgment or any record from the juvenile-court proceedings verifying he was not the child's father and that Larry Stucky was the child's father. Rather, the entry Dodson submitted states that the parentage case was dismissed without prejudice for failure to appear at the hearing (i.e., a failure to prosecute).

The evidence in the present case also includes a copy of a letter sent to Dodson by his second victim, postmarked March 15, 2018, wherein she states that he impregnated her, that she gave birth to a daughter, and that the child was later put up for adoption. (Doc. 1-3, PageID 113). Although Dodson alleges that these statements are false, he fails to point to evidence within or outside his parole records sufficient to either cast doubt on his victim's statements or create a reasonable inference that Defendants knew, or should have known, her information was false. Comments in a Parole Board record from June 2009 notes, in part, that Dodson "states that he received DNA testing stating that he is NOT the

12

father—although he does not minimize (Vic[tim] Con[ference]-V[ictim] and husband still say I/m [Inmate] was father[5])." (Doc. No. 1-3, PageID 47 (footnote added; capitalization in original)). These notes are not probative of whether Dodson was the father; they merely confirm what he said about not being the child's father in reliance on a purported DNA-test result. Without the results of the DNA test, which do not appear in his parole records or in the evidence of this case, these notes merely repeat his allegations. Consequently, these notes fall short of demonstrating that Defendants knew, or reasonably should have known, that Dodson was not the father of his victim's child. *See Keith*, 141 Ohio St.3d at 380 (OAPA not require to "credit every unsupported allegation by a prisoner that the information is inaccurate."); *Jackson v. Hudson*, 2019 WL 3521745, at *3 ("To state a procedural due process claim, then, a potential parolee's complaint must point to 'verifiable errors' contained in the parole file that the parole board knowingly relied on to make its determination." (citation omitted)).

Dodson contends that the Parole Board in 2015 and 2018 relied on the false fact that the community had previously objected to his release on parole. He argues that the records attached to his Motion for Summary Judgment show that before 2015 there were no community objections to his release. (Doc. No. 109, PageID 1051-21).

Yet one of his victims opposed his release in 2006 and again in 2009. (Doc. No. 109-2, PageID 1064-65; Doc. No. 1-3, PageID 103). Records in 2012 report that during a conference, one of his victims opposed his release and that there was "ongoing victim

---

[5] The notes contain two indecipherable marks, possible quotation marks, at this point.

opposition" to his release. (Doc. No. 109-2, PageID 1070, 1072). Dodson overlooks or ignores this repeated documentation of his victim's opposition to his release on parole before 2015. Although Dodson might not consider the victim a member of the community, she certainly was and is, and her opposition counts as community objection to his release before 2015. As a result, the evidence in this case reveals no genuine issue about the community objection to his release on parole before 2015. Dodson has not, therefore, produced evidence upon which a jury could reasonably conclude that in 2018, Defendants denied him parole in 2018 based on information they knew, or should have known, was false.

Dodson next contends that his 2012 parole records falsely report that he was convicted of domestic violence. (Doc. No. 110, PageID 1119). He states that he was never convicted of domestic violence. To support this, he points to a note indicating that his misdemeanor record includes an assault "that was really a D/V [domestic violence]." (Doc. No. 110-2, PageID 1139). This note does not indicate whether Dodson's assault was really a charge or a conviction for domestic violence. Later records in September 2016 clarify that Dodson had "Negligent Assault plea from Domestic Violence charge." (Doc. No. 1-3, PageID 45). Given this clarification no reasonable jury could conclude that the 2012 note was incorrect. And because the clarification in 2016 informed the Parole Board in 2018 that Dodson had been charged with (not convicted of) domestic violence, there is no evidentiary support for Dodson' assertion that the 2018 Parole Board relied on false information concerning a purported domestic-violence conviction.

Dodson lastly maintains that the Parole Board relied on false information to deny

14

him release on parole in 2018 based on extensive victimization as well as considerations of violence and brutality. According to Plaintiff, the Parole Board considered the false information that he kidnapped "and raped a mentally retarded White female causing her to become pregnant with a negro child resulting in the victim placing the child up for adoption." (Doc. No. 109, PageID 1045). As explained previously, the evidence in this case, construed in Dodson's favor, does not indicate that this information was false or that Defendants knew, or should have known, this information was false.

Furthermore, the Parole Board in 2018 reasoned, in part, "Inmate Dodson's case is aggravated by the case-specific factors of violence, brutality, multiple occurrences, multiple victims, and extensive victimization." (Doc. No. 81-6, PageID 817). According to Dodson, the Parole Board references to these factors show it relied on false information because he had not been convicted of felonious assault under Ohio Rev. Code § 2903.13(A) or assault under § 2903.11, "or any other offense involving physical or serious physical harm." (Doc. 109, PageID 1048). Although Dodson was not convicted of these offenses, this does not negate or mollify the acts of violence, brutality, and extensive victimization during the rapes and kidnapping he committed. Dodson, moreover, has not presented affirmative evidence tending to show that the Parole Board relied on false facts when it considered the case-specific factors of violence, brutality, and extensive victimization of the crimes he committed. And the facts the Parole Board described doubtlessly support its conclusion that Dodson's crimes involved violence, brutality, and extensive victimization. For instance, the Parole Board noted that his rapes and attempted rape of one female victim on September 8, 1990 "went on for several hours…. At one point, she was left alone in a

room and she overheard the Offender [Dodson] and Co-Defendant talking about killing her. The Offender then took her to a Second Story window and started to throw her out of it, but pulled her back inside and forced vaginal intercourse on her." (Doc. No. 81-6, PageID 815).

Defendants contend that they are entitled to summary judgment in their favor on Dodson's claim (in his Amended Complaint) that the Parole Board in 2018 considered a fallacious report that he had been terminated from participating in the Comprehensive Sex Offender Program because he had informed a group of sex offenders during class that a female staff member was a rape victim. (Doc. No. 46, PageID 556-57). The problem Dodson cannot overcome is that there is no genuine issue over the fact that he was terminated from this sex-offender program because he told other sex offenders in the program that a female institution staff member had informed him she had been raped. Dodson makes much of his allegation that the female victim lied about the rape. But, even if she had lied, is was his own inappropriate conduct in blabbing to the group about the she rape she suffered that led to his termination from the program. *See* Doc. No. 31, PageID 400 (citing *Dodson v. Berenson*, No. 18-3092, 2018 WL 7135183, at *3 (6th Cir. 2018)). Dodson has not presented any evidence to the contrary or evidence indicating that his parole records contain false information about his termination from the Comprehensive Sex Offender Program.

Dodson has filed a Motion to Seek Further Discovery Pursuant to Fed. R. Civ. P 56(d) and (e). He argues that he needs further discovery to support his claim that his parole record contains the falsity that he kidnapped and raped a mental retarded white woman

16

causing her to become pregnant and put the child up for adoption. (Doc. No. 106). Dodson attached to his original Complaint copies of his parole records and information dating back to at least 2006. (Doc. No. 1, PageID 32-116). Defendants have submitted into the record copies of their discovery responses, including the documents they produced to Dodson. (Doc. No. 81). Although Dodson generally says he needs more discovery to support his claims, has not explained how this is so and has not indicated what materials will possibly bolster his Motions for Summary Judgment opposing Defendants' Motion for Summary Judgment—this despite a similar problem he had in *Dodson v. Berenson*, 2018 WL 7135183, at *4 ("although the district court may have ruled upon the defendants' summary judgment motion before Dodson received the discovery materials that he sought in his motion to compel, Dodson fails to explain how those materials would have helped him survive summary judgment." (citation omitted)). Consequently, his Motion to Seek Further Discovery Pursuant to Fed. R. Civ. P 56(d) and (e) (Doc. No. 106) lacks merit.

Dodson has also filed a Motion Requesting Leave to Submit and Argue in his Motion for Summary Judgment New Evidence Discovered in Defendants['] Summary Judgment Motion. (Doc. No. 103). The Court has considered the "new evidence" he identifies as supporting his Motions for Summary Judgment. But this Motion and the "new evidence" to which he refers do not support his effort to obtain summary judgment and do not defeat Defendants' Motion for Summary Judgment. Dodson does not always accurately view the records on which he relies. For example, he states that the 2018 parole records indicate he was convicted of four counts of rape in case number 901105678B. (Doc. No. 103, PageID 1005). This is incorrect. In Ohio, the offense of "attempt" is

17

identified in a different code section and generally applies to any criminal offense a defendant attempted to complete. *See* Ohio Rev. Code § 2923.02 ("Attempt to commit an offense"). There is no discrete code section for the specific crime of attempted rape. As Defendants cogently explain, the bold type on the second to last line of this record reports that Dodson was convicted of "attempt" under § 2923.02 and for "rape" under R.C. 2907.02—combined to mean one count of attempted rape. (Doc. No. 111, PageID 1170-71). Contrary to Dodson's reading, this record does not say that he was convicted of four counts of rape. Most significantly, the 2018 Parole Board understood that in one of his criminal cases, Dodson had been convicted on one count of rape, and in his other criminal case, he had been convicted of three counts of rape, one count of attempted rape, and one count of kidnapping. *See* Doc. No. 109, PageID 1058. Consequently, there is no genuine dispute over the fact that the 2018 Parole Board had accurate information before it about the total number of Dodson's rape convictions.

Accordingly, for all the above reasons, Dodson's Motions for Summary Judgment lack merit and Defendants' Motion for Summary Judgment are well taken.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Defendants' Motion for Summary Judgment (Doc. No. 83) be GRANTED and Plaintiffs' remaining claims under the Fourteenth Amendment be dismissed with prejudice;

2. Plaintiffs' Motions for Summary Judgment (Doc. No. 109, 110) be DENIED;

3. Dodson's Motion Requesting Leave to Submit and Argue in his Motion for Summary Judgment New Evidence Discovered in Defendants['] Summary Judgment Motion (Doc. No. 103) be GRANTED to the extent his arguments have been he considered, but DENIED in remaining part;

4. Dodson's Motion to Seek Further Discovery Pursuant to Fed. R. Civ. P 56(d) and (e) (Doc. No. 106) be DENIED;

5. Dodson's Motion for Leave to Supplement His Motions for Summary Judgment and Response to Defendants['] Summary Judgment Motion (Doc. No. 116) be DENIED as moot; and

6. Plaintiff's Objection to, and Request to Strike, Defendant's [sic] Response in Opposition to the Plaintiff's Motion for Summary Judgment against Defendant Venters, Smith, and Rauschenberg (Doc. No. 119) be OVERRULED AND DENIED as moot.

February 19, 2021                                              *s/Sharon L. Ovington*
                                                               Sharon L. Ovington
                                                               United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

     Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

     Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).